## BOULDIN. *v.* ALEXANDER.

1. Pending a suit brought to control the affairs of a church and obtain posses sion of its property by a portion of the congregation against its founder and another portion, each claiming to be the lawfully elected trustees, every member who desired to worship at the church was permitted to do so, and it was kept exclusively for church purposes.   A decree passed for the complainants.   *Held,* that they were not entitled to recover for the use and occupation of the church premises, as no claim therefor was made in their bill, and the defendants derived no pecuniary advantage therefrom.

2. The referee having found that money had been collected on behalf of the church by the pastor, who held a deed of trust on the church property to secure notes payable to him, this court directs that he be allowed by the court below to produce them in order that the money be applied as a credit thereon, or, upon his failure to do so, or to satisfactorily account for them, that a decree be entered against him for the money.

APPEAL from the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

*Mr. Saul S. Henkle* for the appellants.

*Mr. Thomas Wilson, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The bill in this case was filed by Joseph Alexander and

others against Albert Bouldin and others, to determine which of two contending boards of trustees of the " Third Colored Baptist Church " was entitled to the possession and control of the church property, including the church building erected by the association as a place of worship; to correct a mistake in a deed executed by Bouldin to the trustees of the church, and to obtain a settlement with him of his accounts as the agent and pastor of the church, and the cancellation and discharge of certain notes secured by real or pretended deeds of trust which had been, from time to time, executed to him.   The first and second of these things were accomplished by a decree affirmed in this court at the December Term, 1872, and reported in 15 Wall. 131.   The complainants were, by that decree, adjudged to be the lawful trustees; the mistake in the deed was corrected, and the present appellants, defendants below, were ordered to deliver the possession of the church building and the lot on which it stood to the complainants.   This left nothing to be disposed of but the matters of account between Bouldin and the church, and the notes which had been given to him.   With a view to this end, the original decree, affirmed here on the former appeal, was that the cause be referred to the auditor of the court below " to examine and report the facts on the following questions : —

" 1st, Whether the defendant, Albert Bouldin, purchased, under the direction of the church, the entire lot of ground on the corner of Fourth and L Streets of George H. Varnell, for the use and benefit of said church ; and whether the money collected by said Bouldin from or on behalf of the church was by him used to aid in the payment of said lot, and, if so, to what amount.

" 2d, To state the accounts between the said Albert Bouldin and the plaintiffs, as trustees of the said church, and the trustees of whom they are the successors ; to report the amounts of money received by said Bouldin from the said church, and from other persons on behalf of said church, and the amounts to which he was entitled for his services in behalf of said church, and has expended therein and about the same, and to state the balance due either way, and for these purposes that he may call witnesses and take testimony.

" That the plaintiffs, until the further order of this court, are enjoined and restrained from selling, disposing of, or in any way incumbering the title of said church property so as to weaken the security of said Bouldin upon the church property."

When our mandate went down on that appeal, the complainants moved that a writ of possession issue at once; but the court withheld it for the coming in of the auditor's report, and, with the consent of the defendants, the order of reference was made to include the following additional questions: —

" 3. In whose possession has the church building and property on the corner of Fourth and L Streets, Washington, D. C., been since the commencement of this suit?

" 4. What is the fair value of the rents, issues, and profits arising and accruing to the party in possession of said property from and since this suit? "

There was no claim in the bill for compensation for the use and occupation of the property, though it was alleged that the defendants unlawfully and by force kept the complainants, who were the only duly elected trustees, out of possession.

As to the notes, it was alleged in the bill that on the 28th of July, 1862, six notes were made to Bouldin, five for the sum of $100 each, payable in one, two, three, four, and five years from date, and the other for $120, payable in six years; and that these notes were secured by a deed of trust to one J. W. Barnaclo. In addition to this, according to the averments in the bill, four other notes of $400 each were afterwards executed to Bouldin, on a settlement of his accounts for the erection of the church building. It was also alleged that the defendants who claim to be trustees of the church property had executed a deed of trust to one Callan, to secure all the notes originally given to Bouldin. The claim on the part of the complainants was, that on a full settlement of all the accounts of Bouldin, and a correction of the mistakes that had occurred in former settlements, it would be found there was nothing due on the notes, and that Bouldin would be largely in debt to the church.

The defendants, in their answer, claimed that the notes for $620 were given and secured by deed of trust to Barnaclo, as stated in the bill, and that on the settlement of accounts, when the church building was completed, six notes, of $400 each,

were given to Bouldin, instead of four. The execution of the deed of trust by the defendant trustees was also relied on.

On the hearing of the case before the auditor, Bouldin refused to produce the notes that had been given to him, or account for their absence. It was proved, however, that there had been paid to or collected by him divers sums of money which should be credited on the notes. The aggregate of these sums, including interest from the date of payment to Nov. 1, 1875, is, according to the report of the auditor, $1,233.47. On account of the failure of Bouldin to present the notes, the auditor made no statement of the amount due upon them, but treated them as withdrawn from the suit by Bouldin. The auditor also found that the entire lot of ground on the corner of Fourth and L Streets, bought from Varnell, was for the use of the church, and charged Bouldin with the proceeds of a sale made of part of the lot. He also reported that the defendants had been in the possession of the church property since the commencement of the suit, and that the value of the rents, issues, and profits accruing to them by reason of such possession, was six per cent per annum on the value of the property, or $498.33 a year. He, therefore, in his accounting, charged the defendants with that amount, payable quarterly each year, from Sept. 28, 1867, the date of the commencement of the suit, until Oct. 1, 1875, and interest on each quarterly instalment as it fell due. The total amount of his allowances in this way, on account of rents, was $4,910.26, as of Oct. 1, 1875.

Upon the filing of the report, the complainants excepted because rents had not been charged from July 28, 1867, instead of September 28. The defendants excepted, 1, because they had been charged with mesne profits; 2, because Bouldin was not credited for the amount of his notes; 3, because Bouldin was charged for the proceeds of the part of the lot bought from Varnell which he had sold; 4, because no allowance had been made to Bouldin for his services; and, 5, because of the amount allowed for payments made to Bouldin.

The court below at special term overruled the exceptions of the complainants, and sustained the exceptions of the defendants to the allowance against Bouldin for the proceeds of the sale of part of the lot bought from Varnell, and to the allow-

ance against all the defendants for rents, and returned the case to the auditor for a further stating of the accounts in accordance with certain instructions. From this decree at special term an appeal was taken by the complainants to the general term, where a decree was rendered against all the defendants, the present appellants, for $4,734.12, "as mesne profits for use and occupation by them of the church premises during the pendency of this suit, to wit, from the commencement of the suit until March 31, 1877, when the said premises were returned to the possession of the plaintiffs." The decree then further goes on to say, " The promissory notes given by the plaintiffs as trustees of the church to the defendant, Albert Bouldin, are not included in this decree, the same having been withdrawn from the consideration of the court. But all other claims by him made against the church or its trustees are rejected and disallowed. The item of interest on mesne profits reported by the auditor in favor of the complainants is disallowed." It was also ordered that the injunction restraining J. W. Barnaclo from proceeding under the deed of trust to him, and that restraining the complainants from selling, disposing, or incumbering the title to the church property, be dissolved.

From this decree the defendants below have alone appealed, and they assign for error the decree against them for the payment of mesne profits, and the disallowance of the claims of Bouldin, not embraced in his notes.

As to the mesne profits, we think the decree below cannot be sustained. There is no claim for an allowance of this kind in the bill, and the proofs do not show that the appellants, or those whom they represent, derived individually any such pecuniary advantage from the use of the property pending the suit as to make it proper they should be held personally accountable in that way. Bouldin was the founder of the society. He gathered the congregation together. He bought the church lot and superintended the erection of the church building. If money was wanted that could not be got from others, he furnished it himself from his own means, and in the end, as the case shows, while the society had secured a property worth, according to the report of the auditor, a little more than $8,000, there was a debt owing to him of over $3,000. The congregation had

increased under his administration to several hundred members. Afterwards dissensions grew up, and two parties were formed, the complainants representing one and the defendants the other. Each sought to control the property and govern the society. The defendants kept possession, and apparently a part of the time with the approbation of the court, for a writ to put them out was denied when applied for. At last the complainants were successful, and Bouldin and his party were required to submit to their government. The contest all along was not so much for possession of the property as for the control of the church affairs. During the entire controversy the church property has been kept exclusively for church purposes. Every member of the congregation was permitted to worship there if he chose. It is possible that the parties officiating at the religious services and controlling the property may not at all times have been such as the complainants and their adherents wanted, but no person was excluded from the church building for the purposes of worship if he wanted to go in. Under these circumstances it seems to us that the defendants are not in equity chargeable personally with the value of the use and occupation of the property during the time they were litigating to keep the control of the society and its affairs.

In other respects the decree below is right, so far as it goes. Upon the evidence, Bouldin is not entitled to any further credits than have been allowed. He voluntarily withdrew or withheld his notes from the auditor and the court, and cannot have any affirmative relief on their account. His rights under the Barnaclo deed of trust are saved by the decree, and as the persons who executed the Callan deed were not lawful trustees, all proceedings under that deed were properly enjoined. We think, however, some order should have been made giving the complainants the benefit of the finding in their favor by the auditor in respect to the moneys paid to or collected by Bouldin to apply on his notes. From the answer of Bouldin, it seems probable that a part of these payments have already been indorsed on the notes; but this cannot be determined with certainty without an inspection of the notes themselves. If he will produce the notes, or satisfactorily account for their absence, so that the proper application of all payments can be

made under the direction of the court and the notes discharged to the extent of the application, that should be done. But if, on an order to that effect, he shall fail to produce the notes, or fail satisfactorily to account for their absence, a decree should be entered against him personally for the several amounts reported by the auditor as having been paid to or collected by him on that account. As this last proceeding has been rendered necessary by his failure to produce the notes on the former hearing, he should be charged with the costs consequent upon such refusal.

The decree will be reversed so far as it charges the appellants with any sum for mesne profits and use and occupation, and the cause remanded for such further proceedings in conformity with this opinion as may appear to be necessary; and it is

*So ordered.*